Myrtle Nell CATRETT, Administratrix
of the Estate of Louis H. Catrett,
Deceased, Appellant,

v.

JOHNS–MANVILLE SALES
CORPORATION, et al.

No. 83–1694.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 22, 1987.

Decided Aug. 7, 1987.

Peter T. Enslein, Washington, D.C., with whom Peter T. Nicholl, Baltimore, Md., and James F. Green, Washington, D.C., were on the brief, for appellant.

Leland Van Koten, with whom H. Emslie Parks, Baltimore, Md., was on the brief, for appellees.

Before WALD, Chief Judge, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

Dissenting opinion filed by Circuit Judge BORK.

STARR, Circuit Judge:

This case is before us on remand from the Supreme Court. The sole question is whether the District Court properly granted summary judgment in favor of an asbestos manufacturer in a suit brought by the survivor of a victim of asbestosis. The underlying litigation began in 1980 when Myrtle Nell Catrett, the appellant in this action, commenced suit in federal district court against 15 named corporations that manufactured or distributed products containing asbestos. Mrs. Catrett's husband, Louis Catrett, had died a year earlier, having devoted a lifetime's work to construction activities involving the use of various asbestos products.

One of the defendants named in Mrs. Catrett's lawsuit was Celotex Corporation, the sole defendant now before us. The District Court granted Celotex's motion for summary judgment, concluding that there was no evidence of Mr. Catrett's exposure to Celotex's products. In our earlier opinion in this case, however, a divided panel reversed. In the panel majority's view, Celotex, by offering no supporting evidence, failed to file a properly supported

motion for summary judgment as required by Federal Rule of Civil Procedure 56(e). *See* 756 F.2d 181 (D.C.Cir.1985). Since the majority found Celotex's motion facially inadequate, we did not consider whether Mrs. Catrett's response sufficed to demonstrate a "genuine issue for trial." *See id.* at 184–85; Fed.R.Civ.P. 56(e) (after properly supported summary judgment motion is filed, burden is on party opposing summary judgment to show "genuine issue for trial").

The Supreme Court reversed. 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Agreeing with Judge Bork's dissent, the Court instructed that while "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " *id.* at 2553 (quoting Fed.R. Civ.P. 56(c)), that support its motion, such an identification is sufficient properly to support a summary judgment motion. Having thus concluded that Celotex had met its initial burden of production and filed a proper summary judgment motion,[1] the Court reversed and remanded the case, suggesting that our "superior knowledge of local law" made us "better suited" to address questions we had previously found unnecessary to consider, namely

> the adequacy of the showing made by [Mrs. Catrett] in opposition to [Celotex's] motion for summary judgment, or ... whether such a showing, if reduced to admissible evidence, would be sufficient

to carry [Mrs. Catrett's] burden of proof at trial.

*Id.* at 2555. We thus are called upon to determine whether Mrs. Catrett's showing was sufficient to avoid summary judgment under Federal Rule of Civil Procedure 56(e).

## I

Before proceeding to an evaluation of Mrs. Catrett's showing, we first need to review, briefly, the course of this litigation as it relates to Celotex. The first significant event bearing on the summary judgment issue occurred in February 1981 with the filing of a joint set of interrogatories by all defendants. Three of these interrogatories are particularly relevant to our inquiry. The first, number 26, asked Mrs. Catrett to identify "persons having knowledge of facts relevant to the subject matter in this lawsuit" and to indicate which of those persons she "intend[ed] to produce as witnesses in the trial in this action." Docket Entry (D.E.) 47 at 10. The second and third, numbers 51 and 52, were more specific, seeking detailed information concerning Mr. Catrett's work with asbestos, asking, *inter alia,* for the "type and identity of each such asbestos material with which [he] had contact." *Id.* at 14–16.

Mrs. Catrett filed her answers in June 1981. Her response to numbers 26, 51, and 52 was the same; she simply indicated that she would respond later, in supplemental answers. *See* D.E. 61 at 18, 25.[2]

Three months later, in September 1981, Celotex filed its first motion for summary judgment, the central thrust of which was that Mrs. Catrett had "failed to show the

---

1. Justice Brennan's dissent suggests that on remand this court "should reevaluate whether the defendant met its initial burden of production." 106 S.Ct. at 2556 n. 1 (Brennan, J., dissenting). Justice Brennan's suggestion, coming in the face of what seems to us the clear conclusion by the majority that the burden has been met, *see id.* at 2555, is based upon the argument that Justice White, in his separate concurrence, *id.* at 2555 (White, J., concurring), "plainly believes" reevaluation is appropriate and that Justice White's views should control. *Id.* at 2556 n. 1 (citing *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977)). Upon reflection, we believe it prudent not to accept

the invitation. Justice White did, after all, join the opinion of the majority and thus that opinion controls our examination of the case on remand. *Compare Marks,* 430 U.S. at 193, 97 S.Ct. at 993 (discussing situation where no opinion is joined by a majority of Justices).

2. One other interrogatory response is relevant. In answer to interrogatory number 9, which asked her to identify all of Mr. Catrett's employers, Mrs. Catrett listed Anning-Johnson, a company in Melrose Park, Illinois, as Mr. Catrett's employer for part of 1970 and all of 1971. *See* D.E. 61 at 7.

decedent came into contact with any product containing asbestos designed, manufactured, or distributed by Celotex." D.E. 77.

Mrs. Catrett filed an opposition to that motion in October 1981.[3] In response to the contention that she had failed to demonstrate her late husband's exposure to Celotex's products, Mrs. Catrett directed the court's attention to three items, which she claimed "[a]t the very least ... demonstrate that there is a genuine factual dispute for trial": (1) a transcript of Mr. Catrett's testimony in a workmen's compensation claim, in which he indicated his exposure to a product called "Firebar" while working for a company called Anning-Johnson in the Chicago, Illinois area; (2) a letter from the Assistant Secretary of Anning-Johnson, T.R. Hoff, to a Mr. O'Keefe of Aetna Casualty & Surety, Anning-Johnson's insurance company, reporting on Mr. Catrett's employment with Anning-Johnson[4]; and (3) a letter from Aetna's Mr. O'Keefe to Mrs. Catrett's counsel essentially restating the contents of the Hoff letter. D.E. 87.[5] In the wake of Mrs. Catrett's filing, Celotex in November 1981 withdrew its motion for summary judgment. D.E. 97.

One month later, Celotex took another tack, filing a motion for a change of venue. The motion sought transfer of the case to the Northern District of Illinois. D.E. 129. In its accompanying Memorandum of Points and Authorities, Celotex set forth the following basis for its motion: Mr. Catrett was based in the Chicago area "at all times during his alleged exposure to any product manufactured by The Corporation and/or its subsidiaries." *Id.* Celotex attached to its memorandum four supporting exhibits, two of which are relevant here. The first, labeled "Deposition of Decedent," was a portion of the same workmen's compensation testimony Mrs. Catrett had submitted in her opposition to Celotex's earlier (withdrawn) motion for summary judgment. *Compare id.* Exhibit A *with* D.E. 87 Exhibit E. As noted above, in this testimony Mr. Catrett recounted his use of an asbestos product named Firebar while working for Anning-Johnson. The second exhibit of relevance for our purposes was a collection of purchase orders reflecting the sale and shipment of Firebar to Anning-Johnson. Several of these documents evidenced the shipment of Firebar from an entity called "Carey-Canadian Asbestos," which is identified in those doc-

---

**3.** Before Mrs. Catrett filed her opposition, Celotex filed its answers to her interrogatories. Two related items from these answers are relevant. First, in a preliminary statement, Celotex identified itself as a "successor-in-business" to various companies "which were engaged in the manufacture and sale of asbestos containing insulation products," and indicated that its "involvement in the asbestos insulation business began with its purchase of Panacon Corp. in 1972." D.E. 80 at 1. Second, in an attached exhibit, Celotex offered a more detailed description of the Panacon merger:

On June 30, 1972, Panacon Corporation was merged into The Celotex Corporation.... This merger was also statutory, and The Celotex Corporation assumed the assets and ordinary liabilities of Panacon Corporation.

*Id.* exhibit A. Thus, the record before the District Court reflected, at that early stage, a direct link between Celotex and Panacon. Moreover, Celotex's interrogatory responses expressly state that it had assumed Panacon's ordinary liabilities, a statement Celotex's counsel confirmed and amplified at oral argument before this court on remand from the Supreme Court.

**4.** Mr. Hoff went on to indicate that "[w]e understand that the Firebar product was manufactured by Carey-Canadian." D.E. 87 Exhibit D.

Celotex seizes upon this "understand" language to suggest that Hoff's letter was based only on a general corporate understanding rather than the requisite personal knowledge. *See* Supplemental Brief of Appellee at 5; *cf.* Fed.R.Civ.P. 56(e) (requiring affidavits to be made on personal knowledge). In our view, the letter cannot fairly be read as Celotex urges. The earlier part of the letter, discussing Mr. Catrett's work for Anning-Johnson, purports to state facts (presumably) within Hoff's personal knowledge. It is only when Hoff moves from intra-Anning-Johnson matters that he begins to use the more cautionary "understand" language.

**5.** When she filed her opposition, Mrs. Catrett apparently also indicated that she would be calling Mr. Hoff as a witness. *See Celotex Corp. v. Catrett,* 106 S.Ct. at 2559 (Brennan, J., dissenting) (citing Transcript of Supreme Court Oral Argument at 6–7, 27–29, *reprinted in* Supplemental Brief of Appellee Appendix 2). Mr. Hoff was actually listed as a witness in February 1981, after Celotex's second summary judgment motion was filed, in Mrs. Catrett's Supplemental Answers to Defendant's Interrogatories, as a response to interrogatory number 26. D.E. 161.

uments as "A Division of Panacon Corporation," to Anning-Johnson during 1971. That was, of course, the period when Mr. Catrett worked at Anning-Johnson in the Chicago area. *See id.* Exhibit D.[6]

Shortly after filing its change of venue motion, Celotex renewed its motion for summary judgment. The second motion was differently crafted from the first, aborted motion; now, Celotex contended that Mrs. Catrett had failed to show exposure "within the jurisdictional limits" of the District Court, a rather different point than that advanced in its geographically unlimited initial motion. D.E. 137. Celotex's memorandum supporting this second motion likewise limited the claim to Mrs. Catrett's asserted failure to show exposure to a lack of "any such evidence [of exposure to Celotex products] *within the jurisdictional confines of [the District] Court." Id.* (emphasis added).

In January 1982, Mrs. Catrett filed an opposition to Celotex's new summary judgment motion, again directing the court's attention to the three evidentiary items upon which she had originally relied: (1) the workmen's compensation testimony of Mr. Catrett; (2) the Hoff letter; and (3) the O'Keefe letter. D.E. 142. Then in February 1982, Mrs. Catrett filed Supplemental Answers to Defendant's Interrogatories, including interrogatory number 26, referred to above.[7] In her supplemental response, Mrs. Catrett listed "T.R. Hoff, As-

sistant Secretary, Anning-Johnson Company" as a person "having knowledge of facts relevant to the subject matter in this lawsuit." She further indicated that Mr. Hoff would be called as a witness at trial. D.E. 161.

This is where matters stood in July 1982, when the District Court held a hearing on Celotex's motions for a change of venue and summary judgment. In that hearing, counsel for Celotex addressed the three items of evidence relied upon by Mrs. Catrett. Although Celotex had itself submitted the decedent's workmen's compensation testimony to support its change of venue motion (and argued that the District Court should consider the testimony "for the limited purposes of use in this motion" [8]), Celotex nonetheless objected to the testimony on the ground that it "would not be admissible." D.E. 184B at 4 (Transcript of the July 1982 proceeding). No such objection, however, was interposed with respect to the Hoff letter's admissibility, or relevance, although to be sure Celotex did generally disparage the letter's value. At the conclusion of the hearing, the District Court granted Celotex's motion for summary judgment on the spot, ruling from the bench that there had been "no showing that the plaintiff was exposed to the defendant Celotex's product in the District of Columbia or elsewhere within the statutory period." *Id.* at 9.[9] No opinion was forthcoming.

---

**6.** Mrs. Catrett filed an opposition to Celotex's motion for a change of venue in February 1982. D.E. 164. The District Court heard argument on the change of venue motion together with Celotex's second summary judgment motion in July 1982. *See also infra* note 8.

**7.** Mrs. Catrett did not respond, however, to interrogatories number 51 and 52 in her supplemental answers. Celotex makes much of this fact. *See* Supplemental Brief of Appellee at 5–6. We decline to give overmuch weight to this obviously unacceptable tack on the part of appellant because that omission is more properly brought to the District Court's attention as a failure to comply with a proper discovery request. *Cf.* Fed.R.Civ.P. 37. Celotex, together with other defendants, did file a motion to compel, *see* D.E. 68, but the motion was never ruled by the trial court. In these circumstances, it seems to us that Celotex should be able to make

nothing more *before us* of Mrs. Catrett's failure to respond to the two interrogatories.

**8.** Presumably, Celotex's counsel was referring in this colloquy to the change of venue motion.

**9.** In our previous opinion in this case, we observed that during the hearing the District Court focused, almost exclusively, on the notion that the only alleged exposure occurred outside the District of Columbia and on the issue of venue. *See* 756 F.2d at 185 n. 14; *see also id.* at 183 n. 3. We repeat that observation here. We nonetheless gave dispositive weight to the District Court's inclusion of the two words, "or elsewhere," because, as we noted, it was only the inclusion of that phrase that made the District Court's ruling "even conceivably proper." *Id.* at 185 n. 14. Justice Stevens discussed this point in his dissent, arguing that the District Court was clearly granting summary judgment "on the

The correctness of this ruling, in light of the record before the District Court, is the issue we face today. More specifically, the precise question is whether the record before the District Court at the moment of truth evidenced a genuine issue of material fact. We are emphatically not called upon to decide whether this action must go to trial or whether, to the contrary, the case could be disposed of on summary judgment on the basis of a more fully developed record. Our sole and limited task is to assess with care the record before the District Court at the time it granted Celotex's summary judgment motion and to determine whether that ruling was proper in light of the state of the record at that juncture.

## II

Upon review, we discern several items pointing to the existence of a genuine issue concerning Mr. Catrett's alleged exposure to Celotex products. First, Mrs. Catrett (twice) submitted the letter from Mr. Hoff, the Anning-Johnson executive. This letter chronicles Mr. Catrett's work for Anning-Johnson, reporting that he worked for the company for "one calendar year ending, 12/22/71." According to the Hoff letter, Mr. Catrett's "duties were to supervise and train crews in the application of Firebar Fireproofing." D.E. 142 Exhibit C. Thus, on its face, the letter reflects knowledge by a specific Anning-Johnson official of the deceased employee's exposure to Firebar fireproofing. The letter further relates an "understanding" that the manufacturer of Firebar was now owned by Celotex. *See supra* note 4.

Confronted with this potentially damning piece of evidence, Celotex argues that the Hoff letter should be ignored by virtue of its asserted inadmissibility at trial. *See* Brief of Appellee The Celotex Corp. at 8–11; *see also* 10A C. Wright, A. Miller & M.

Kane, *Federal Practice and Procedure* § 2721 (2d ed. 1983) (In passing on a summary judgment motion, a court may consider materials specified in Federal Rule of Civil Procedure 56(c) as well as "any material *that would be admissible or usable at trial.*" (emphasis added)).

In the circumstances of this case, we believe that the Hoff letter should be considered. The inadmissibility of the letter, despite Celotex's contention to the contrary, is by no means obvious (although we need not and do not pass judgment on its admissibility). Mrs. Catrett argues that the letter is admissible, *see* Reply Brief for Appellant at 8–9, asserting that the Hoff letter is admissible as falling within the business records exception to the hearsay rule. *See* Fed.R.Evid. 803(6). *More importantly, Celotex never objected to the District Court's consideration of the Hoff letter.* To the contrary, in the hearing on Celotex's two motions, counsel for Celotex discussed in detail the substance of the Hoff letter, and at one point the letter was handed in open court to the District Judge (at his request) for his examination. *See* D.E. 184B at 4, 6.

In this situation, it could scarcely be clearer that the letter was before the District Court; what is more, in the absence of even a hint to the contrary from the trial court (much less a ruling), we can only presume that the document was duly considered by the court in reaching its ruling. After all, the District Judge specifically asked to see the document and was, as we just recounted, furnished a copy moments before handing down his ruling from the bench. Since it is well established that "inadmissible documents may be considered by the court if not challenged," 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2722, at 60 (2d

basis of no exposure in the District of Columbia," a ruling Justice Stevens described as "palpably erroneous." 106 S.Ct. at 2561 (Stevens, J., dissenting). Although we would agree with Justice Stevens' observations, if that were indeed the trial court's ruling, we are nonetheless constrained not to pierce the veil, as it were, of the

District Judge's actual words; we thus once again treat the District Court's ruling as a bona fide grant of summary judgment on the basis of no evidence of exposure in the District of Columbia *or elsewhere. See also id.* at 2551 n. 2 (majority's discussion of Justice Stevens' dissent).

ed. 1983),[10] we are satisfied that the Hoff letter is properly (at this stage) to be considered in assessing whether a genuine issue of fact exists.

The second item also relates to Mr. Hoff. In her supplemental interrogatory responses, Mrs. Catrett listed Hoff as a witness. There can, of course, be no doubt that this response is properly considered in ruling on a summary judgment motion. *See* Fed.R. Civ.P. 56(c) (specifically listing "answers to interrogatories" as items that may be considered). Taking this response together with the Hoff letter, the record, dispassionately viewed, reflects the existence of a witness who can testify with respect to Mr. Catrett's exposure to Firebar.[11] Thus, even if the Hoff letter itself would not be admissible at trial, Mrs. Catrett has gone on to indicate that the substance of the letter is reducible to admissible evidence in the form of trial testimony. *See Celotex Corp. v. Catrett,* 106 S.Ct. at 2553 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").[12]

Third, as we recounted above, the record contains several documents, *submitted by Celotex,* recording the sale of Firebar to Anning-Johnson during the period when Mr. Catrett worked there. *See* D.E. 129 Exhibit D. These documents operate to put Firebar and Mr. Catrett in the same place at the same time. Since Mrs. Catrett's interrogatory responses make it

---

10. "As is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged. The objection must be timely or it will be deemed to have been waived." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2722, at 60–61 (2d ed. 1983) (footnotes omitted). Since here Celotex interposed no objection to the Hoff letter's admissibility—indeed, as we point out in text, Celotex dealt with the substance of the Hoff letter, D.E. 184B at 4—it is clear that the objection has been waived. As we have also noted, the District Court asked to see and was handed a copy of the Hoff letter. *Id.* at 6. We are not persuaded to the contrary conclusion by the dissent's assertion, Dissent at 4–5 n. 1, based principally on an aposiopetic remark by counsel plus the word "either," that Celotex *did* object to the admissibility of the letter. But in any event, the District Court did consider the letter and ruled on the summary judgment motion only after having examined the letter. It strikes us as hypertechnical in the extreme to suggest that an objection (1) never clearly articulated by Celotex, (2) never ruled upon by the District Court, and (3) implicitly overruled by virtue of the District Court's consideration of the letter, would prevent us from taking into account, on appeal, the very evidentiary materials that were before the District Court in ruling on this motion.

11. Indeed, counsel for Celotex conceded in oral argument before the Supreme Court that if Mrs. Catrett's interrogatory response listing Hoff as a witness had also described his testimony as reflecting exposure by Mr. Catrett—for example, by paraphrasing the contents of the Hoff letter—summary judgment would have been inappropriate. Under those circumstances, Celotex would then be obligated to take Hoff's deposition (or otherwise secure a statement from him by affidavit or declaration) in order successfully to move for summary judgment. *See* Transcript of Supreme Court Oral Argument at 43, *reprinted in* Supplemental Brief of Appellee Appendix 2. The situation in the record seems to us quite similar, functionally, to a more detailed interrogatory response. We are therefore puzzled by the dissent's assertion that this "falls far short of ... even suggesting that anyone has been identified [with] personal knowledge about any asbestos exposure." Dissent at 41. Indeed, the conclusion we draw seems an eminently reasonable, if not inescapable, inference. It is entirely in keeping with the Supreme Court's admonition that "all justifiable inferences are to be drawn in ... favor [of the non-movant] ... [and] a trial court ... may ... deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

12. *See also Celotex Corp. v. Catrett,* 106 S.Ct. at 2555 (determination on remand is whether Catrett's showing "if reduced to admissible evidence" would be sufficient to carry her burden at trial); *id.* (White, J., concurring) ("A plaintiff need not initiate any discovery or reveal his witnesses or evidence unless required to do so under the discovery rules or by court order. Of course, he must respond if required to do so; but he need not also depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he has failed to produce any support for his case."); Supplemental Brief of Appellee at 7 ("The Supreme Court recognized that Rule 56 does not require the party opposing a summary judgment motion to put her evidence into admissible form.... A party is not excused, however, from demonstrating that its evidence can be put into admissible form....").

abundantly clear that Mr. Catrett's particular vocation was the application of fireproofing, these documents go a long way toward creating a genuine issue with respect to Mr. Catrett's exposure to Firebar.

Fourth, the record reflects a direct link among the three corporate entities or divisions of relevance, namely Carey-Canadian Asbestos, Panacon Corporation, and Celotex. Carey-Canadian is identified in the sales records furnished by Celotex as the entity selling Firebar to Anning-Johnson, Mr. Catrett's employer. Those sales records describe Carey-Canadian as "A Division of Panacon Corporation." D.E. 129 Exhibit D. Celotex's interrogatory responses, in turn, relate that Panacon was merged into Celotex in 1972 (thus corroborating the more general statements as to corporate ownership found in the Hoff letter). The responses stated, in addition, that "[t]his merger was ... statutory, and The Celotex Corporation assumed the assets and ordinary liabilities of Panacon Corporation." D.E. 80 Exhibit A. Thus, notwithstanding Celotex's protestations to the contrary, *see* Supplemental Brief of Appellee at 8–10, the record before the District Court evinces a clear link between Carey-Canadian and Celotex, and thus between Celotex and Firebar.

If Celotex desires to press its contention that it is not liable for any injury or death caused by the use of Firebar, it is obviously at liberty to do so. We need not and do not pass judgment on the merits of any such contention. Our conclusion in this respect is much narrower; we are satisfied that the record before the District Court when it granted summary judgment admits of only one conclusion—Celotex is responsible for the ordinary liabilities of Carey-Canadian.

## III

Our task in determining whether these evidentiary items, taken together, render summary judgment improper is well marked out, both in the express language of Rule 56 and relevant Supreme Court precedent. Rule 56(c) directs that summary judgment is to be granted if the record shows

> that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). As the Supreme Court recently instructed in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." The Court observed, furthermore, that the standard is identical to the standard for directed verdict; a court must ask

> whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

*Id.* at 2512; *see also Catrett*, 756 F.2d at 188–89 (Bork, J., dissenting).

Considering the record before the District Court when it granted summary judgment [13]—in particular, the four items discussed above—we believe that the issue of exposure was not so one-sided that Celotex was entitled to judgment as a matter of law. The record contains sufficient evidence to create a genuine issue of material fact with respect to Mr. Catrett's exposure to the asbestos product Firebar while working for Anning-Johnson. While the four items taken individually provide less than overpowering support for Mrs. Catrett's position, their cumulative effect is, we be-

---

13. We do not consider two items from the record: (1) Mr. Catrett's workmen's compensation testimony; and (2) the letter from Mr. O'Keefe to Mrs. Catrett's attorney. We believe it would be inappropriate to consider the first item. It is not unlikely that the evidence would be held inadmissible, *see* Fed.R.Evid. 804(b)(1); in addition, Celotex specifically objected before the District Court to its consideration (while at the same time using it for the limited purpose of supporting its change of venue motion). *See* D.E. 184B at 4. The second item, the O'Keefe letter, is not considered for a more basic reason. To paraphrase, liberally, Gertrude Stein's observation, there is nothing there to consider. The O'Keefe letter is merely a restatement of the contents of the Hoff letter and, as such, offers no independent evidence of a genuine issue of material fact.

lieve, sufficient to defeat the summary judgment motion.[14]

To recapitulate, the four items described above, together with certain other general information from both Mrs. Catrett's and Celotex's interrogatory responses, *see supra* notes 2 & 3, establish a sufficient linkage between Mr. Catrett and Firebar, and then between Firebar and Celotex, to create a genuine issue with respect to Mr. Catrett's exposure to Celotex products. First, the interrogatory responses show that Mr. Catrett worked as a fireproofer. *See* D.E. 61 at 3–8 (listing occupations). Indeed, that point, we gather, is uncontested. Second, the interrogatory responses show that Mr. Catrett worked for Anning-Johnson in 1971. *See supra* note 2. Third, the Hoff letter indicates that Mr. Catrett's duties at Anning-Johnson involved the application of Firebar fireproofing. *See* D.E. 142 Exhibit C. Fourth, the identification of Hoff as a witness who will be called at trial, *see* D.E. 161, suggests (on this record) that his trial testimony could detail Mr. Catrett's activities at Anning-Johnson (as well as perhaps establishing other potentially relevant facts, such as whether Anning-Johnson utilized other types of fireproofing). Fifth, the sales records submitted by Celotex to support its motion for change of venue indicate that Firebar was shipped by Carey-Canadian Asbestos, a division of Panacon Corp., to Anning-Johnson during 1971. *See* D.E. 129 Exhibit D. Sixth, and last, Panacon (and Carey-Canadian) merged with Celotex in 1972, with Celotex assuming the "ordinary liabilities of Panacon Corporation." D.E. 80 Exhibit A.

On this record, therefore, an unbroken chain links Mr. Catrett to Firebar, and Firebar to Celotex. Under the specific circumstances before us, we cannot, in conscience, conclude on this state of the record that no genuine issue of material fact exists with respect to Mr. Catrett's exposure to Celo-tex products. Accordingly, the District Court's grant of summary judgment was, on the basis of the record then before it, in error. We therefore reverse the judgment and remand the case for further proceedings not inconsistent with this opinion.

*It is so ordered.*

BORK, Circuit Judge, dissenting:

In this case, a tort suit involving the alleged exposure of plaintiff's deceased husband to asbestos products, the district court granted summary judgment for the defendant manufacturer. The Supreme Court has now held that the defendant carried its burden, in presenting a motion for summary judgment, of coming forward with proof of the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The issue before us on remand is to specify the *plaintiff's* burden in opposition to the motion and to assess whether the plaintiff has met her burden in this case. The majority finds that she has met her burden, and has made enough of a showing to defeat the motion for summary judgment. I disagree.

The Federal Rules of Civil Procedure state that when one party offers a properly supported motion for summary judgment, the other party's response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed. R.Civ.P. 56(e). In *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explicitly endorsed the requirement that "specific facts" must be set forth. *Id.* at 2511; *see also Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987).

---

14. We believe, with all respect, that the dissent incorrectly limits its examination to items identified by Mrs. Catrett that bear solely upon identifying an individual with personal knowledge of her late husband's exposure to asbestos. The proper inquiry, in our view, is whether a genuine issue of material fact exists with respect to Mr. Catrett's exposure to asbestos. This broader inquiry necessarily requires consideration not only of the two items considered by the dissent, but in addition (1) Celotex's submission showing that Firebar was used at Anning-Johnson at the time Mr. Catrett was employed there, and (2) record evidence linking the three relevant corporate entities.

The Court also said that there is no genuine issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 106 S.Ct. at 2511. This standard "mirrors" the standard for a directed verdict. *Id.; Celotex*, 106 S.Ct. at 2553; *United States v. General Motors Corp.*, 518 F.2d 420, 441–42 (D.C.Cir.1975).

The central issue here on motion for summary judgment is causation. Defendant alleges that plaintiff has made no showing that anyone can offer personal knowledge that any exposure to asbestos occurred in this case. I agree that plaintiff has not identified "specific facts" that would indicate such exposure occurred, and I certainly think that plaintiff has not made the kind of showing necessary to defeat a directed verdict motion. I would therefore grant defendant's motion for summary judgment.

Plaintiff has identified two items that may bear on whether anyone has personal knowledge of exposure to asbestos in this case. One is plaintiff's listing of T.R. Hoff, assistant secretary at a company where plaintiff's husband had been employed for one year, as a potential witness in the case. The other is a letter from Hoff to his company's insurer, which states from the company records the dates plaintiff's husband had been employed, his general duties, and the names of the manufacturers of asbestos products used by the company during that period. Together, these items are thought to provide sufficient "specific facts" to defeat a summary judgment motion on the issue of causation.

It would seem apparent that the mere listing of a potential witness, without more, does not constitute setting forth specific facts. Here plaintiff has never claimed that Mr. Hoff has any personal knowledge that her husband was exposed to asbestos during his year of work at this company, and indeed did not specify the grounds of his possible testimony at all, except to say that he would be able to testify about "facts relevant to the subject matter of this lawsuit." Docket Entry ("D.E.") 161. On the other hand, plaintiff has failed ever to answer interrogatories served by defendant that asked for a variety of specific items of information she might have about her husband's possible exposure to asbestos on any occasion. D.E. 47 at 14–16.

The majority concludes, however, that we should interpret plaintiff's listing of Mr. Hoff as a witness in light of his letter to the insurance company, thereby finding enough evidence to stave off the equivalent of a motion for directed verdict on causation. This conclusion is incorrect for two reasons. First, the sum total of all this "evidence" falls far short of showing, or even suggesting, that anyone has been identified who can testify from personal knowledge about any asbestos exposure. That lack alone requires that defendant's motion for summary judgment be granted.

In addition, and also dispositive, the letter itself is inadmissible as evidence and thus cannot be considered by this court in evaluating the summary judgment motion. Rule 56 indicates that a trial judge should decide a summary judgment motion based on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," Fed.R. Civ.P. 56(c), and "by examining the pleadings and the evidence before it and by interrogating counsel." *Id.* 56(d). It is settled law that the judge may consider only these specific materials or other evidence that would be admissible at trial. Inadmissible evidence is not to be considered unless, like an affidavit, it is "otherwise provided for" in Rule 56. *See* Fed. R.Civ.P. 56(e); *see also* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2721 (1983) ("[T]he particular forms of evidence mentioned in the rule are not the exclusive means of presenting evidence on a Rule 56 motion. The court may consider any material that would be admissible or usable at trial."); 6 J. Moore, *Moore's Federal Practice* ¶ 56.11[1.–8] (2d ed. 1972) ("[I]n addition to pleadings, depositions, admissions on file, answers of a party to interrogatories, and affidavits, which Rule 56(c) specifically enumerates, a court may consider oral testimony and any other or additional materials that would be admissible in evidence or otherwise usable

at trial. Material that does not come within the above broad category should not be considered."). The strength of this principle is shown by the manner in which a trial judge is supposed to treat affidavit testimony: if some of the testimony contained in the affidavit would be inadmissible if it were offered at trial (*e.g.*, as hearsay), the judge is to consider only the portions that would be admissible at trial and excise the remainder. *See* 6A J. Moore, *supra*, ¶ 56.-22[1], at 56–1330 to 56–1331; 10A C. Wright, A. Miller & M. Kane, *supra*, § 2738, at 511.

Letters are not among the specific materials listed in Rule 56, and the Hoff letter is inadmissible hearsay. It was not made under oath, and does not purport to be based on personal knowledge. There has been some suggestion that it could fall within the "business records" exception to hearsay, *see* Fed.R.Evid. 803(6), but I think the suggestion is incorrect. Although the contents of the letter may have been gleaned from business records, the letter itself is not an item "kept in the course of a regularly conducted business activity," where it "was the regular practice of that business activity to make the memorandum, report, record, or data compilation." *Id.* Instead, the letter seems to have been written to respond to inquiries that were made in the course of this litigation. *See Palmer v. Hoffman*, 318 U.S. 109, 111–15, 63 S.Ct. 477, 479–81, 87 L.Ed. 645 (1943).

The majority refers to the widespread view that unopposed material may be considered in deciding a summary judgment motion. Maj. op. at 36. The record in this case shows, however, that defendant opposed the admissibility of the letter.[1] At no stage of these proceedings has any party even suggested the contrary. Indeed, plaintiff's brief concedes this point, stating that the trial court "apparently accepted Celotex's argument that the documents submitted by Mrs. Catrett were irrelevant because they would not, themselves, be admissible at trial." Supplemental Brief for Appellant on Remand at 7. I thus can find no tenable basis for the suggestion that this court should consider the Hoff letter in evaluating the summary judgment motion.

For these reasons, I think plaintiff has not carried her burden in resisting summary judgment. On the causation issue, despite more than two years for discovery, she has been unable to present the district court with any "specific facts" beyond the vague listing of a potential witness not claimed to have any personal knowledge about exposure.[2] My concern is that the majority's view may make decisions on summary judgment both more difficult and more uncertain because the majority's rationale suggests that trial judges must consider various permutations of vague and inadmissible evidence in reaching those decisions. This indicates that the "directed verdict" standard for evaluating summary judgment motions does not apply only to the evidence currently before the trial court on the motion for summary judgment but also to evidence that may emerge in the later course of the proceedings. That amounts to an automatic and unrequested

---

1. At the time the Hoff letter was considered in open court, defendant's counsel discussed it with the judge in a manner that indicated his opposition to admitting it as evidence. Counsel said: "Your Honor, *there is only a letter from the assistant secretary and that is not*"—at this point the judge interrupted with several questions, but then counsel finished—"We also have, and they rely on this, the deposition of the decedent that was taken of him prior to his death for the compensation claim, *which would not be admissible in this case either.*" D.E. 184B at 3–4 (emphasis added).

2. The majority also points to documents that indicate business relationships between the defendant and one of the companies that employed plaintiff's husband. Maj. op. at 38–39. These documents are relevant on the causation issue, because if someone were able to testify from personal knowledge that plaintiff's husband was exposed to asbestos products during the time he worked for that company, these documents would help to establish some probability that the asbestos products he was exposed to were actually manufactured by the defendant. But these documents do not supply the crucial missing step on the causation issue, which involves specifying someone who can testify from personal knowledge about asbestos exposure. For the reasons given in the text, none of the other documents, including the Hoff letter, cures this omission.

extension of the time that is available for plaintiff to produce admissible evidence. This approach represents a departure from the Supreme Court's admonition that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp.*, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1). I respectfully dissent.