INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, UAW 941, Betty Robinson, James Kurtz, Marilyn Kurtz, and Stan Hossler, Plaintiffs,

v.

CTS CORPORATION and CTS Corporation Retirement Plan, Defendants.

No. S90–00458.

United States District Court, N.D. Indiana, South Bend Division.

Jan. 30, 1992.

Richard J. Swanson, Barry A. Macey, Indianapolis, Ind., Charles S. Leone, South Bend, Ind., for plaintiffs.

Paul E. Becher, Elkhart, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The plaintiff brought this action alleging breach of a collective bargaining agreement in violation of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and for wrongful denial of benefits and clarification of benefit rights under a qualified employee pension plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

### I.

The facts in this case are briefly summarized below. Plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and UAW Local 941 (hereinafter collectively referred to as "Union") are unincorporated associations and labor organizations within the meaning of 29 U.S.C. §§ 152 and 185. CTS Corporation ("CTS") is an employer in an industry affecting commerce within the meaning of 29 U.S.C. § 142. The collective bargaining agreement currently in effect between CTS and the Union is the 1989–1992 collective bargain agreement. The CTS Corporation Retirement Plan ("Plan") is an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A).

The individual plaintiffs, Betty Robinson, James Kurtz, Marilyn Kurtz and Stan Hossler, are participants in the Plan within the

meaning of 29 U.S.C. § 1002(7). James Kurtz has been on union leave since 1972; Marilyn Kurtz has been on union leave since 1976; Stan Hossler has been on union leave since 1965; and Betty Robinson began her union leave in 1979. Plaintiffs James Kurtz, Marilyn Kurtz and Stan Hossler presently remain on such leave of absence. Plaintiff Betty Robinson was on such leave of absence until her retirement from CTS in January, 1990.

The individual plaintiffs' union leaves of absence are provided for in ¶ 133 of the 1989–1992 collective bargaining agreement. Paragraph 133 provides as follows:

Employees elected or selected to perform Union duties, Chi–Phone Federal Credit Union duties and employees elected to Public Office in either the City of Elkhart, Elkhart County, the State of Indiana, or in the U.S. Legislature, or any type of public work for the Federal Government or any division or subdivision of any of these bodies, shall be granted a leave of absence until such service shall end. All time spent shall be as accumulative service.

Since the Plan was first established in 1950 until 1989 bargaining unit members who were on a union leave of absence had been credited for years of service with CTS while on their union leaves of absence. Starting July 1989, the defendants refused to credit bargaining unit members, James Kurtz, Marilyn Kurtz, Stan Hossler, and Betty Robinson with credited service under the CTS Pension Plan.

The CTS Plan is expressly incorporated into the 1989–1992 collective bargaining agreement by ¶ 175 which provides in relevant part:

Under the terms and conditions of this Agreement, Tier One Employees are provided a retirement plan that is a Qualified Defined Benefit Plan filed with and approved by the U.S. Internal Revenue Service. All provisions are contained in a formal plan document No. *007*, (Previous Plan Document No. *003*) titled the "CTS Corporation Retirement Plan", *as adopted by the Elkhart Division*, and each employee shall receive a Summary

Plan Description of the Plan *No. 010186*, (Previous Plan No. 090183) detailing all aspects of his or her participation in and benefits under the Plan.

Section 4.7 of the Plan provides, in relevant part:

*Leave of Absence or Layoff.* Neither temporary absences from work granted by the Company to an Employee in writing as a leave of absence and not treated by the Company as a termination of employment nor a layoff will interrupt continuity of employment or result in a loss of Vested Credited Service or Credited Service....

Upon the defendants refusal to continue crediting these bargaining unit members with credited service plaintiffs brought this cause of action alleging that the rights of individual plaintiffs had been violated pursuant to the LMRA § 301, 29 U.S.C. § 185 and ERISA § 502, 29 U.S.C. § 1132.

## II.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the plaintiffs and defendants, by their respective counsels, have filed motions for summary judgment. The court being duly advised and having heard the arguments of counsel now addresses the cross motions for summary judgment. For the reasons stated below, this court finds that there is no genuine issue as to any material fact, and that the plaintiffs are entitled to judgment as a matter of law.

## III.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *accord Arkwright–Boston Mfrs. Mut. Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984).

Recently, the Supreme Court of the United States took the opportunity to address Rule 56. In two cases decided on the same day, the Court expanded the scope of the application of Rule 56. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

■■■ After *Celotex,* it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. 477 U.S. at 325–26, 106 S.Ct. at 2553–54. *See also Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The initial burden is on the moving party to demonstrate " 'with or without supporting affidavits' " the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Rule 56). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.' " *Id.* Furthermore, in *Anderson,* the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. 477 U.S. at 248, 106 S.Ct. at 2510. In addition, the court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing the standard of proof relevant to that case or issue. *Id.* at 252–55, 106 S.Ct. at 2512–13. For recent academic insight into *Celotex* and *Anderson,* see Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 194 (1987), where the author states:

> The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgment, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

For· the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d at 33. A recent object lesson applying these ideas is found in *Puckett v. Soo Line Railroad Co.,* 897 F.2d 1423 (7th Cir.1990), *Jamison–Bey v. Thieret,* 867 F.2d 1046 (7th Cir.1989), and *Richardson v. Penfold,* 839 F.2d 392 (7th Cir.1988). For an exact and recent analysis on this subject, see Friedenthal, *Cases on Summary Judgment: Has There Been a Material Change in Standards?* 63 Notre Dame L.Rev. 770 (1988).

## IV.

■■ On their behalf, the defendants argue that there is no requirement in the collective bargaining agreement or the Plan that entitles employees on full-time, indefinite union leave to pension credit, and thus there is no "contractual commitment" to give such pension credits. Absent "contractual commitment" awarding pension credit would be an illegal practice under § 302 of the LMRA, 29 U.S.C. § 186. The LMRA provides in relevant part:

> (a) It shall be unlawful for any employer or associate of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—
>
> . . . .
>
> (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce....

29 U.S.C. § 186(a)(2). Accordingly, CTS discontinued its practice of granting credited service under the Plan to persons on full-time union leave effective July 1, 1989. CTS's action was prospective only, and

credited service under the Plan which the individual plaintiffs received prior to July 1, 1989 was not affected.

The Seventh Circuit's interpretation of § 302 was spelled out in *Toth v. USX Corp.*, 883 F.2d 1297, 1300 (7th Cir.1989), *cert. denied* 493 U.S. 994, 110 S.Ct. 544, 107 L.Ed.2d 541 (1989). "It is fairly universally acknowledged that a central purpose of section 302 as a whole was to prevent employers from bribing union officials." *Toth*, 883 F.2d at 1300. Section 302(c)(1) exempts from the prohibition of § 302(a) "any money or other thing of value payable by an employer ... to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer...." 29 U.S.C. § 186(c)(1).[1]

▮▮▮ Thus § 302(c)(1) authorizes payments by an employer to a union official who is either an "employee or former employee ..., as compensation for, or by reason of, his service as an employee." The *Toth* court found it consistent with § 302(a)'s "goal of preventing bribery" to construe the phrase "as compensation for, or by reason of, his service as an employee" as covering collectively bargained payments to former employees:

> One obvious instance in which continuing payments constitute recompense for past services is when those continuing payments were bargained for and formed part of a collective bargaining agreement.

*Toth*, 883 F.2d at 1304. See also *Communications Workers of America v. Bell Atlantic Network Services, Inc.*, 670 F.Supp. 416 (D.D.C.1987).[2] The *Toth* court explained why collectively bargained payments present no danger of bribery:

> [R]equiring that such compensation be openly bargained for and included in a collective bargaining agreement is one way in which to guard against use of retroactive payments to bribe union officials. And, if inclusion in a collective bargaining agreement is required, the officials would have to answer to the rank-and-file about any term of the agreement aimed at compensating the officials.

Applying *Toth* to the present case, awarding of the pension credits to individual plaintiffs should be found to violate § 302(a) if the awarding of those credits during periods of union leave was not collectively bargained for. This is precisely what the defendants argue.

The defendants rest their argument on ¶ 133 of the collective bargaining agreement. That paragraph provides for all time spent while on leave of absence to be as "accumulative service." The defendants argue that "accumulative service" refers only to seniority. Thus, there is no contractual right to pension credits for employees on full-time, indefinite union leave under ¶ 133. While this contention on the part of the defendant may or may not be true, this court does not believe that it needs to reach the issue of what is meant by "accumulative service." Instead this court looks to the Plan which is more precise, for purposes of this issue, in its language regarding union leaves of absence and crediting of service.

---

**1.** The full text of 29 U.S.C. § 186(c)(1) reads as follows:

> (c) The provisions of this section shall not be applicable (1) in respect to any money or other thing of value payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations or personnel administration or to any representative of his employees, or to any officer or employee of a labor organization, who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer....

**2.** In *Communications Workers*, Judge Gasch of the United States District Court, District of Columbia wrote, "[e]ach collective bargaining agreement that includes a union leave benefits provision reflects the fact that, in consideration for work performed, all employees have received the opportunity to take union leave without the loss of certain benefits." *Communications Workers*, 670 F.Supp. at 419. The *Communications Workers* decision concluded "that benefits granted employees who were on union leaves (for up to eighteen years) were acceptable under the section 302(c)(1) exception. 670 F.Supp. 416, 419 (D.D.C.1987)." *Toth*, 883 F.2d at 1304.

All provisions of the Plan are the result of collective bargaining. While it has been argued that the Plan was not the subject of collective bargaining, this court remains wholly unconvinced by such an argument. Paragraph 175 expressly incorporates the Plan into the collective bargaining agreement. A collective bargaining agreement results from negotiations conducted by presumably equally competent attorneys on each side of the table. As indicated at oral argument, negotiations for a collectively bargained agreement are generally hard-fought battles. It is inconceivable to this court that any party involved in collective bargaining would agree to the express incorporation of a document of the length and breadth of the Plan without considering its provisions in that party's overall negotiation strategy. Given the nature of collective bargaining and the fact that the Plan was expressly incorporated into the collective bargaining agreement this court finds it indisputable that the Plan's provisions represent a collectively bargained for pension/retirement benefit package.

Section 4.7 of the Plan provides this court with the language to resolve this dispute. That section provides for "Vested Credited Service or Credited Service" to continue for employees granted "a leave of absence and not treated … as a termination of employment nor a layoff." The individual plaintiffs in this case are on an approved leave of absence from CTS as provided for by ¶ 133. The defendants do not argue that the individual plaintiffs have been terminated from employment or that they have been laid off. Thus, pursuant to § 4.7 the individual plaintiffs should continue to receive "Vested Credited Service or Credited Service." By its refusal to grant credited service for pension purposes to employees on union leave, CTS is in violation of the collective bargaining agreement. CTS is ordered to award credited service to the individual plaintiffs pursuant to the Plan for the period beginning in 1989 when CTS discontinued awarding credited service to these plaintiffs and continuing through the period covered by the current collective bargaining agreement, specifically the 1989–1992 collective bargaining agreement.

V.

Based upon the foregoing and the facts and authorities cited it is ORDERED, ADJUDGED AND DECREED that the defendants' Motion for Summary Judgment is DENIED, that the plaintiffs' Motion for Summary Judgment is GRANTED, and summary judgment is hereby entered against the defendants and in favor of the plaintiffs on all Counts of Plaintiff's Complaint.

Any requests for attorney's fees shall be submitted within 30 days of this judgment.

SO ORDERED.