**JAPAN HALON CO., LTD., Plaintiff,**

**v.**

**GREAT LAKES CHEMICAL CORP.
and Yuichi Iikubo, Defendants.**

**No. 4:90cv37AS.**

United States District Court,
N.D. Indiana,
Hammond Division
at Lafayette.

Dec. 9, 1993.

John R. VanWinkle, Bingham Summers Welsh and Spilman, Indianapolis, IN, Matthew D. Powers, Jared Bobrow, Weil Gotshal and Manges, Menlo Park, CA, for plaintiff.

John C. Duffey, James V. McGlone, John M. Stuckey, Stuart and Branigin, Lafayette, IN, for defendant.

### *MEMORANDUM AND ORDER*

ALLEN SHARP, Chief Judge.

### I. Procedural History

On February 23, 1990, the plaintiff, Japan Halon Co., Ltd. ("Japan Halon"), filed a complaint in the Central District of California on February 23, 1990, against the defendant Great Lakes Chemical Corp. ("Great Lakes"). The plaintiff alleges that Great Lakes has misappropriated, and continues to misappropriate, trade secrets from Japan Halon (Complaint at ¶ 12). Further, the plaintiff alleges that the defendant obtained the alleged trade secrets from Yuichi Iikubo, in violation of Iikubo's confidentiality obligations to Japan Halon (Complaint at ¶ 12(a)). The defendant's motion to transfer this case to the Northern District of Indiana was granted on July 16, 1990. Yuichi Iikubo was added as a defendant on April 2, 1991. The defendants filed their motion for summary judgment on June 29, 1993. The plaintiff filed its motion for summary judgment on June 30, 1993. This court heard oral argument on Japanese law in this case from all parties on August 26, 1993. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2).

### II. Facts

Japan Halon is a manufacturer of chemical products. Iikubo worked in executive capacities from Japan Halon's inception in 1975 until June of 1986. Between March of 1981 and January, 1989, Japan Halon, Onoda Cement Co., Ltd ("Onoda"), and Great Lakes were parties to a licensing agreement. Un-

der the terms of that agreement, Great Lakes obtained the licensing rights to manufacture two Japan Halon products, Halon 1211 and Halon 1301. Iikubo was in charge of the business dealings between Japan Halon and Great Lakes. Following his resignation from Japan Halon in 1986, Iikubo joined Great Lakes.

## III. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993).

A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) [1]; and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

■ The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Hughes v. Joliet Correctional Center,* 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990).

■ During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Brennan v. Daley,* 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson,* 477 U.S. at 252–255, 106 S.Ct. at 2512–2514.

The 1986 Supreme Court trilogy was recently re-examined in *Eastman Kodak v. Image Technical Services,* —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Kodak* is that it did not tinker with *Celotex* and *Anderson,* and possibly involves an attempt to clarify *Matsushita.* This view is well supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions,* 139 F.R.D. 441 (1992).

## IV. Discussion

A day-long (very long day) evidentiary hearing was held in Lafayette, Indiana, on August 26, 1993, in regard to the court's obligation to decide the content of relevant provisions of Japanese law at times relevant to this case. Unfortunately, in that hearing there was much chaff and very little wheat to assist this court. The witnesses were only marginally helpful and some engaged in distracting tediousness and ego-driven obstinance. However, the massive record to date permits this court to decide now the content

---

1. For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

of Japanese law relevant to this case in time and subject matter.

■ There is little doubt that the post-World War II constitution of Japan contemplates an enlightened and regulated version of so-called free market economics, including the right to enter into private contracts with reference to private employment. To some extent, these areas of Japanese law reflect concerns for the protection of corporate business confidential information and the loyalty of directors and others in top management positions. There is little real dispute with regard to the obligation of directors and other top management personnel, to maintain the confidential information of the corporation during their employment tenure. These general concepts are clearly discernable in Japanese law from the so-called expert evidence heard on August 26, 1993. In this regard, there can be little doubt that this individual defendant had an obligation, during his employment tenure, to maintain and not improperly disclose to competing third parties the confidential information of his employer, this plaintiff and its successors in interests. To some limited extent, even in the absence of a specific contract, that obligation continued after this individual defendant left this plaintiff's successor and joined up with this competing corporate defendant. A factual question may remain as to precisely what information is subject to this species of protection and whether any such protected information was improperly carried away, disclosed and used by this plaintiff's competitor. While the basic outlines of relevant Japanese law are sufficiently clear, it remains for the relevant facts to be developed in further proceedings in this court either under summary judgment or at trial.

This court labored long in a somewhat similar vineyard in *Eaton Corp. v. Appliance Valves Corp.*, 526 F.Supp. 1172 (N.D.Ind. 1981), *aff'd by unpublished order*, 688 F.2d 842 (7th Cir.1982); 634 F.Supp. 974 (N.D.Ind.1984), *aff'd*, 790 F.2d 874 (Fed.Cir. 1986). *Eaton* is an object lesson in the proof difficulties in this area of the law. It is certainly correct that confidential information may be inclusive of information covered formally by patents and trade secret law; however, it is not limited to those well-established legal concepts.

This court must also construe a written contract between this plaintiff's predecessor and this corporate defendant. Such is not vague and does not invite the imposition of the so-called parol evidence rule. Recently, in *Monon Corp. v. Wabash Nat. Corp.*, 780 F.Supp. 577 (N.D.Ind.1991), the basic principles in regard to such construction were outlined on the basis of recent authority in this circuit. The construction advanced by these defendants as to this written contract under either the law of Japan or the law of Indiana is simply not tenable. Such is a licensing agreement. The contract means exactly what it says and severely limits the conduct of this corporate and individual defendant.

■ This leaves a somewhat narrower set of factual disputes for the trier of fact (jury) to decide in this case. The burden remains on this plaintiff to establish that defendant Yuichi Iikubo did in fact improperly disclose confidential information.

This case is also being prosecuted by highly sophisticated and astutely professional counsel who should *now* bend every effort to settle this dispute. The good offices of an excellent and highly talented United States magistrate judge are made available for this purpose. All outstanding discovery disputes are now referred to Magistrate Judge Robin D. Pierce, to be heard in either South Bend or Lafayette with all lead trial counsel in direct participation. **IT IS SO ORDERED.**