**Bill WILLIAMS, Plaintiff,**

v.

**J.R. DUCKWORTH, J. Bradley, R. Bronnenberg, and R.D. Freake, Defendants.**

**No. S 81–437.**

United States District Court,
N.D. Indiana,
South Bend Division.

Dec. 8, 1983.

Bill Williams, pro se.

Linley E. Pearson, Atty. Gen., Ronald D. Buckler, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case was filed pursuant to 42 U.S.C. § 1983 by an inmate at the Indiana State Prison in Michigan City, Indiana, against several of the Prison's officials. It is presently before this court on defendants' Motion for Summary Judgment filed October 31, 1983.

At pages one through three of defendants' motion appears the following language:

Plaintiff is hereby notified, pursuant to *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982), that Rule 56(e), Federal Rules of Civil Procedure, reads as follows:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

This Rule means that in the event that you elect to respond to this motion, your response must include or be supported by sworn statements, answers to inter-

rogatories, or sworn testimony in the form of depositions. You cannot merely rely upon any conflict or inconsistency between the contents of the complaint that you filed and the affidavit or affidavits attached to this motion. If you do not respond to this motion, or if your response does not include and is not supported by sworn statements or testimony or answers to interrogatories, then the facts set forth in the attached affidavit or affidavits will be accepted by the Court as true. If you submit an affidavit or affidavits in support of your response, the facts in each affidavit must be personally known to the person making the affidavit and not be hearsay, and the facts must be specific and not general. Merely denying the facts in the attached affidavit or affidavits or giving opinions or beliefs is not enough.

Pursuant to Rule 7(b) of the Rules of the United States District Court for the Northern District of Indiana, your response must be filed within fifteen (15) days from the date of service (the date on the certificate of service found at the end of the attached memorandum in support). Failure to file a response within that time may subject this motion to summary ruling; that is, the Court may decide this motion without your response. Upon your written request, the Court may enlarge the time within which to respond; that is, give you more time to respond. The Court may also allow you more time to file affidavits if you make written request.

■ Notwithstanding this clear and detailed admonition, plaintiff has filed nothing in response to defendants' motion for summary judgment. Therefore, the information set forth in the numerous affidavits and exhibits proffered by the defendants in support of their motion must be deemed uncontroverted.

■ Before proceeding to an examination of the merits of defendants' motion, however, this court must first address itself to plaintiff's renewed request for appointed counsel.[1] *Brown-Bey v. United States,* 720 F.2d 467 at 471 (7th Cir.1983); *Emory v. Duckworth,* 555 F.Supp. 985, 987 (N.D.Ind.1983).

There is no constitutional right to appointed counsel in a civil case. *Thomas v. Pate,* 493 F.2d 151 (7th Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). Rather, the decision whether to appoint counsel in a case rests within the sound discretion of the court. *McBride v. Soos,* 594 F.2d 610 (7th Cir.1979). When considering motions for appointed counsel, this court is guided by the standards set forth in *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981). These standards include, but are not necessarily limited to, such considerations as the legal and factual merits of the claim presented, the degree of complexity of the issues involved, and the movant's apparent physical and intellectual abilities to prosecute the action. See also, *Merritt v. Faulkner,* 697 F.2d 761 (7th Cir.1983); *McKeever v. Israel,* 689 F.2d 1315 (7th Cir.1982). This court is also mindful of a point not often made in these matters, and that is that the operative word in 28 U.S.C. § 1915(d) is "request", not "appoint", i.e., "[t]he Court may request an attorney to represent any such person unable to employ counsel." See David Ashley Bagwell, "Procedural Aspects of Prisoner § 1983 and § 2254 Cases in the Fifth and Eleventh Circuits," 95 F.R.D. 435, 443 (1982).

■ Applying the above considerations to the facts of this case as developed thus far, this court again concludes that plaintiff is not entitled to appointed counsel herein. Although plaintiff has alleged a great deal of wrongdoing on the part of the defendants, the defendants have addressed each allegation, point by point, amply supporting their positions with numerous affidavits and exhibits. As already noted, plaintiff has failed to support any of his

---

**1.** Plaintiff's initial request for appointed counsel was denied by order of this court on February 1, 1982.

allegations or to attempt to refute any of the defendants' contentions.

Further, this court notes that plaintiff has not indicated any mental or physical impairment that would inhibit him from prosecuting his claim.[2] Finally, this court takes judicial notice of the pleadings presented to date by the plaintiff. The pleadings evince an understanding of the legal and factual bases of plaintiff's claims, as well as a passable ability to research the law relevant to the issues at hand. These considerations, coupled with an apparent lack of merit to his claims, lead this court to the conclusion that the motion for appointed counsel must be, and hereby is, DENIED. See *Brown-Bey, supra,* slip op. at 7; *Wilson v. Duckworth,* 716 F.2d 415 (7th Cir.1983) (denial of appointed counsel in habeas petition); *Childs v. Duckworth,* 705 F.2d 915 (7th Cir.1983) (denial of appointed counsel in § 1983 action).

Proceeding now to an examination of the merits of plaintiff's claim, the following are the untroverted facts as ascertained from a review of the defendants' affidavits and exhibits proffered in support of their summary judgment motion.

## I.

On December 14, 1981, plaintiff Bill Williams, an inmate at the Indiana State Prison (hereinafter I.S.P.), filed this *pro se* complaint pursuant to 42 U.S.C. § 1983. In his complaint, plaintiff alleges violations of his rights under the Eighth Amendment by virtue of the fact that unnamed administrators and employees of the Indiana Department of Correction (hereinafter I.D.O.C.) at the I.S.P. denied him dental care and treatment. In support of this claim plaintiff avers that in 1979 he applied for dental treatment, including the constructions of lower dentures and partial upper dentures; that he was placed on a waiting list; that the list had been exhausted a dozen times,

and that he still had not received the dental treatment requested.

In Count II of his original complaint, plaintiff further alleges violations of his rights under the Fourteenth Amendment for the reason that he had been denied a pair of size 8½ EE shoes. In support of this claim plaintiff avers that in 1977 he requested from the Receiving Department of the I.S.P. one pair of size 8½ EE shoes and that the request was not satisfied, and that on November 17, 1981, the plaintiff was informed by unnamed employees of the I.S.P. that the shoes would not be ordered because not enough similar requests had been made to justify such an order.

On December 18, 1981, plaintiff filed a Motion to Amend the Original Pleadings. In the Amended Complaint plaintiff reasserts his claims concerning the denials of dental treatment and of size 8½ EE shoes, by alleging that on several occasions he had by letter informed unnamed I.S.P. employees of the continuing nature of these problems. In his amended complaint, plaintiff additionally claims that he was denied medical treatment in the form of a denial of eyeglasses.

Viewed in the liberal light mandated by *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), plaintiff has presented the following issues to this court:

A. Whether the plaintiff's Eighth Amendment right not to be subjected to cruel and unusual punishment was violated by the allegedly deliberate indifference of I.S.P. employees as manifested by the refusal of dental and optometrical care; and,

B. whether the plaintiff's Eighth Amendment right not to be subjected to cruel and unusual punishment was violated by I.S.P. employees because the plaintiff's request for a pair of size 8½ EE shoes was never satisfied.

---

**2.** This court would also note that it had the opportunity to observe the plaintiff at the hearing held in this matter on May 27, 1983, at the Indiana State Prison. The plaintiff was articulate and knowledgeable of his case, filing with the court various exhibits. He also appeared to

be in excellent health, and displayed no physical impairments. Finally, this court would point out that plaintiff acted as spokesman for his coplaintiffs in the hearing held on May 25, 1983, at the Indiana State Prison, in *Wallace, et al. v. Pearson, et al.,* S 83–4.

## II.

On March 9, 1978, the plaintiff was first placed on a waiting list to receive dental treatment, including the construction of partial dentures. Appointments for dental treatment were made for March 13, 1978, on which date the plaintiff failed to appear, and on October 4, 1978, on which date the plaintiff again failed to appear. The plaintiff received dental work at the dental care unit on July 9, 1979, July 16, 1979, and again on August 21, 1979. At the third appointment he received a set of repaired upper and lower dentures.

On November 28, 1979, plaintiff received further dental treatment at the dental care unit; and on February 1, 1980, impressions were taken in order to remake an upper denture. The completed dentures were dispensed to the plaintiff on February 15, 1980. On June 28, 1980, the plaintiff had a tooth extracted, and on July 17, 1980 an additional tooth was added to the plaintiff's upper dentures. On November 7, 1980 the plaintiff's upper dentures were adjusted.

On November 12, 1980, the plaintiff again failed to appear at the dental care unit for a scheduled appointment.

On May 11, 1981, a set of impressions were taken in order to construct a new partial lower denture for the plaintiff. On July 24, 1981, pursuant to the construction of the new lower dentures, the plaintiff had seven teeth extracted.

On October 29, 1981, primary impressions were taken of the plaintiff in order to construct new upper partial dentures.

On November 2, 1981, the plaintiff again failed to appear for a scheduled appointment at the dental care unit.

On both January 25 and February 10, 1982, the plaintiff received further dental treatment in the course of constructing new dentures.

On January 12, 1983, the plaintiff received additional dental work, and was then placed on a waiting list to receive dental work that would lead to the eventual construction of a full set of dentures. On April 20, 1983 primary impressions were taken of the plaintiff in order to construct a complete set of dentures. On April 21, 1983 the plaintiff received secondary impressions.

On April 26, 1983, plaintiff Williams received a trial fit for upper dentures at which time he became insolent, abusive, used profane language, and generally disrupted the entire dental unit. The plaintiff was removed from the dental care unit.

The dentists at the dental care unit have, since April 26, 1983, refused to treat the plaintiff until such time as he apologizes and assures them that no further disruptions will occur during dental appointments.

Dr. Reed, a licensed optometrist employed as consultant and supervisor of the I.S.P. eye care unit, first examined the plaintiff on August 23, 1977, at which time he diagnosed aphakia, opacities, and a cataract on the plaintiff's left eye.

The cataract condition was referred to Dr. Richard J. Houck, a consulting opthalmic surgeon to the I.S.P. On August 23, 1977, Dr. Reed further noted that the plaintiff had previously had a cataract on his right eye extracted in a surgical operation.

On October 13, 1977, Dr. Reed again examined the plaintiff, at which time he diagnosed further complications with plaintiff's right eye, and again noted the cataract on plaintiff's left eye. Glasses were ordered and dispensed to the plaintiff on November 11, 1977.

On November 22, 1977, Dr. Houck examined the plaintiff pursuant to Dr. Reed's referral, and scheduled a surgical operation for November 29, 1977, to remove the cataract on plaintiff's left eye. On November 29, 1977, Dr. Houck surgically removed a cataract from the left eye of the plaintiff. Then, on April 11, 1978, Dr. Houck again examined the plaintiff and wrote a prescription for new glasses.

On May 9, 1978, Dr. Reed examined the plaintiff, noted that the cataract had been removed from plaintiff's left eye but noted

other eye problems, and ordered the new glasses.

On June 15, 1978 new glasses were again ordered by Dr. Reed and dispensed to plaintiff on June 27, 1978.

Dr. Reed examined the plaintiff again on August 28, 1979, at which time another set of corrective glasses were ordered due to the development of an opacity in the vitreous. These glasses were dispensed to plaintiff on January 3, 1980.

Dr. Reed next examined the plaintiff on December 4, 1978, at which time an aphoric condition was diagnosed and corrective glasses were ordered. These glasses were dispensed to plaintiff on January 3, 1980.

On April 28, 1981, Dr. Houck examined the plaintiff, noted a defect in the construction of the plaintiff's glasses, and wrote a new prescription for glasses. These glasses were dispensed to the plaintiff in May of 1981.

On July 22, 1982, Dr. Reed examined the plaintiff, diagnosed an aphoric condition of the left eye and a dense opacity on the right eye. These conditions were noted and the plaintiff was again referred to Dr. Houck for further treatment.

On November 22, 1982, Dr. Houck examined the plaintiff and wrote a new prescription for glasses which were dispensed to plaintiff on February 22, 1983.

Officer Willie E. McCann is the correctional officer at the I.S.P. whose duty is to supervise the Receiving Department. The Receiving Department is responsible for the ordering and issuing of clothing, including shoes, to inmates.

Each incoming inmate at I.S.P. is issued a set of clothing including shoes pursuant to the size requested by the inmate. These items of clothing are replaced and reissued every six months.

Over a period of time from May 12, 1978, to August 2, 1983, the plaintiff received a total of 13 pairs of shoes. Among those shoes issued plaintiff received one pair of size 9 EEE on January 19, 1982, that were specially ordered, one pair of size 8½ EE shoes, on February 9, 1982 that were spe-

cially ordered, one pair of size 8½ EE shoes on August 28, 1982, one pair of size 8½ E shoes that were stretched to size 8½ EEE on June 2, 1983, and one pair of size 9 E shoes on August 2, 1983. The plaintiff informed Officer McCann that he was satisfied with the size 9 E shoes on August 2, 1983.

Inmate requests for a specific size of shoe are filled on a regular basis if the size and width requested is common. Inmate requests for shoes of abnormal widths are generally not filled until there is in increase in demand to justify such an order, except where the need is medically prescribed. Requests for shoes of abnormal widths are filled on a regular basis by stretching common size shoes to abnormal widths by use of a special shoe stretcher at the I.S.P. shoe shop.

The records of the Receiving Department contain no notation that plaintiff had any medical need for size EE width shoes. A memorandum written by Dr. Nguyen dated January 7, 1982, indicates that the plaintiff had no deformity of the feet and did not require orthopedic shoes.

### III.

In any action brought under 42 U.S.C. § 1983, the plaintiff must show both a deprivation of a federally guaranteed right and that the deprivation occurred at the hands of those acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). Once the plaintiff has successfully cleared those two hurdles, he must then overcome a third where he has alleged a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff must show that the named defendants were deliberately indifferent to his serious medical needs such as to constitute an unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

In *Estelle v. Gamble, supra,* the Court held that, where the inmate plaintiff

had been seen and treated on several occasions by different physicians and other medical personnel, nothing more than a case of medical malpractice had been alleged and medical malpractice, i.e., negligence, did not state a cognizable claim under 42 U.S.C. § 1983. 429 U.S. at 107, 97 S.Ct. at 292. This is true, irrespective of whether the medical officer is being sued in his personal or official capacity. *Id.*

■ Even under the most liberal interpretation of plaintiff's pleadings, mandated by *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is clear that he has stated, at most, a claim for alleged medical malpractice. Such is insufficient to state a claim under § 1983. *Estelle v. Gamble, supra; Merritt v. Faulkner,* 697 F.2d 761, 765 (7th Cir.1983); *Duncan v. Duckworth,* 644 F.2d 653, 654 (7th Cir. 1981); *Gibson v. McEvers,* 631 F.2d 95, 98 (7th Cir.1980). Even if it could be argued that plaintiff's claim is grounded on a sincere disagreement with the type and quality of diagnosis and treatment received, such disagreement with treating doctors still does not rise to the level of a constitutional deprivation. See, e.g., *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975); *Shields v. Kunkel,* 442 F.2d 409 (9th Cir. 1971). Accordingly, plaintiff's Eighth Amendment claims regarding dental and optical "malpractice" must necessarily fail.

■ Turning now to plaintiff's Eighth Amendment [3] claim regarding the failure to provide him with size 8½ EE shoes, it is apparent that this claim must also fail.

In defining what constitutes cruel and unusual punishment the Supreme Court in *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) set forth a dynamic type description:

The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be "cruel and unusual." The Court has interpreted these words "in a flexible and

dynamic manner," *Gregg v. Georgia,* 428 U.S. 153, 171, 96 S.Ct. 2909, 2924, 49 L.Ed.2d 859 (1976) (joint opinion), and has extended the Amendment's reach beyond the barbarous physical punishments at issue in the Court's earliest cases. See, *Wilkerson v. Utah,* 99 U.S. 130, 25 L.Ed. 345 (1879); *In re Kemmler,* 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890). Today the Eighth Amendment prohibits punishments which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia, supra,* [428 U.S.] at 173, 96 S.Ct., at 2925, or are grossly disproportionate to the severity of the crime, *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977) (plurality opinion); *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). Among "unnecessary and wanton" inflictions of pain are those that are "totally without penological justification." *Gregg v. Georgia, supra,* 428 U.S., at 183, 96 S.Ct., at 2929; *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

*Id.,* at 345–46, 101 S.Ct. at 2392.

Pursuant to the above concept the Court, at page 347 further held that the deprivation of "basic human needs" would constitute cruel and unusual punishment, but that conditions that are "harsh" may be a part of the penalty for offenses against society:

These principles apply when the conditions of confinement compose the punishment at issue. Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. In *Estelle v. Gamble, supra,* we held that the denial of medical care is cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain

**3.** Although denominated as a Fourteenth Amendment violation in his original complaint, the manner in which plaintiff has advanced the "shoe claim" makes it clear that what is actually

alleged is an Eighth Amendment claim, i.e., that the failure to provide plaintiff with size 8½ EE shoes constitutes the infliction of cruel and unusual punishment.

without any penological purpose. 429 U.S., at 103, 97 S.Ct., at 290. In *Hutto v. Finney, supra,* the conditions of confinement in two Arkansas prisons constituted cruel and unusual punishment because they resulted in unquestioned and serious deprivation of basic human needs. Conditions other than those in *Gamble* and *Hutto,* alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency that we recognized in *Gamble, supra,* at 103–104, 97 S.Ct., at 290–291. But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.

Clothing has been held to be a basic necessity, not to be withheld from those incarcerated in penal institutions. *Newman v. State of Alabama,* 559 F.2d 283, 286 (5th Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). However, it must be borne in mind that we are not here dealing with an outright *denial* of clothing, but rather with a provision of clothing (shoes) with which the plaintiff is dissatisfied.

In *Sparks v. Fuller,* 506 F.2d 1238 (1st Cir.1974), the court reviewed a claim that an inmate of the New Hampshire Prison was dissatisfied with the kind of clothing issued to him. After citing to *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the court at page 1239 disposed of the complaint, holding it to be frivolous:

The complaint in *Cronin v. Fuller* alleges: "If it were not for [petitioner's] personal clothing he would be forced to go naked or wear only the one suit of clothes that the administration has provided and be forced to wash them out at night in his cell so that they would be clean in the morning." The petitioner apparently feels that the prison authorities have an obligation to issue him kinds and quantities of clothing. Absent an allegation that the prisoner was in any way seriously affected by this failure— here the harm alleged is totally speculative—the claim cannot be recognized in the federal courts. This is again a matter that falls within the discretion of the prison authorities.

*Accord, see Sellers v. Roper,* 554 F.Supp. 202, 209 (E.D.Va.1982); *Tunnell v. Robinson,* 486 F.Supp. 1265, 1269 (W.D.Pa.1980).

In *Henderson v. Secretary of Corrections,* 518 F.2d 694 (10th Cir.1975), a case directly on point, an inmate alleged that he had been diagnosed as suffering from a bilateral hammertoe condition, that a prescription for corrective shoes had been written, but that the corrective shoes were never provided. Plaintiff argued that such deprivation constituted cruel and unusual punishment pursuant to the Eighth Amendment.

At page 695 of its opinion, the Court of Appeals disagreed:

The issue of whether inadequate medical care deprived prisoners of a right secured by the Federal Constitution has been persuasively considered in *Paniagua v. Moseley,* 451 F.2d 228 (10th Cir. 1971) and *Coppinger v. Townsend,* 398 F.2d 392 (10th Cir.1968). "The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires." *Coppinger,* supra, p. 394. We cannot say that the inadequacy of appellant's normal shoes or the omission to provide the corrective shoes gives rise to a constitutional deprivation sustaining a § 1983 claim nor that appellant could collaborate this set of facts to support a claim which would entitle him to relief. See *Dewell v. Lawson,* 489 F.2d 877 (10th Cir.1974); *Page v. Sharpe,* 487 F.2d 567 (1st Cir.1973); and *Kochie v. Norton,* 343 F.Supp. 956 (D.C.Conn., 1972). Therefore, although portions of appellant's complaint are cognizable as a § 1983 action, dismissal of the action is affirmed on the additional basis that the alleged inadequate medical treatment fails to state a claim on which relief can be granted.

As already noted, there is nothing to show that plaintiff had a medical reason for needing a shoe of exactly 8½ EE dimensions; indeed, the memorandum of Dr. Nguyen specifically noted that no such orthopedic necessity existed in plaintiff's case. Thus, the prison staff consistently ordered shoes at or near the size of 8½ EE for the plaintiff on a regular basis, then routinely altered those shoes not of exactly 8½ EE in the prison shoe shop so that they would be usable by the plaintiff. Under no circumstances can the above facts be deemed to constitute a showing of deliberate indifference on the part of the defendants resulting in the wanton infliction of cruel and unusual punishment.

One final note in conclusion: even a liberal reading of plaintiff's complaint and other pleadings demonstrates plaintiff's failure to allege any specific, personal wrongdoing on the part of any of the individual named defendants. Even under the mandate of *Haines v. Kerner, supra,* such constitutes grounds for dismissal of § 1983 claims. *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981).

Accordingly, and for all of the foregoing reasons, defendants' motion for summary judgment is hereby GRANTED in their favor, and against the plaintiff. CASE DISMISSED.