**INLAND STEEL CORPORATION, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**Civ. No. H 88–106.**

United States District Court, N.D. Indiana, Hammond Division.

May 18, 1989.

**390**

Terrance L. Smith, East Chicago, Ind., for plaintiff.

Harold Abrahamson, Hammond, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### Facts

On August 27, 1984, a transformer owned by plaintiff Inland Steel Corporation (Inland) was arranged to be shipped from the Ohio Transformer Corporation in Louisville, Ohio to the plaintiff's facility in East Chicago, Indiana. The transformer was to be shipped by defendant Consolidated Rail Corporation (Conrail). Inland entered into a contract with Conrail, utilizing the straight Bill of Lading—Short Form, attached as Appendix "A", which reflects receipt of the transformer from Ohio Transformer Corporation by Conrail in good condition on August 28, 1984. The bill of lading states as follows:

"(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing the bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property (or, in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after reasonable time for delivery has elapsed; * * * * Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

The transformer was loaded on car CR 766039, and impact recorders were placed on the car. The car was shopped by Conrail from August 31 through September 4 to provide adequate wheel clearances. During this period, a heavy impact was recorded on the impact to CR 766039 recorders.

The transformer arrived at Inland on September 8, 1984. On September 2, 1984 when Inland attempted to install the transformer, it did not work.

After the transformer was repaired, Inland filed a written claim for the cost of those repairs. Inland filled out a claim form dated June 7, 1985. This form was then stamped received by Conrail on June 10, 1985. (See appendix letter B) On March 27, 1986, Conrail denied Inland's claim. (See appendix letter C.)

Inland filed suit on February 26, 1988, claiming that Conrail had delayed payment of Inland's claim. On May 6, 1988, Conrail filed a motion to dismiss which was converted into a motion for summary judgment on February 3, 1989. Conrail contends the claim filed by Inland was late. Inland argues that based on Rule 6(a), their claim was timely filed. Inland has filed a response to defendant's motion to dismiss, and a supplemental submission in support of the motion for summary judgment.

Neither side disputes the facts in this case. The only question before this court is the application of the law to the facts. Jurisdiction in this case is based upon Section 11707 of the Interstate Commerce Act (49 U.S.C. § 11707), and 28 U.S.C. § 1337.

*Issues*

1) What day was the claim filed by Inland and was it timely filed?
2) Was the correspondence between Inland and Conrail sufficient to constitute a filing of a written claim?

*Argument*

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure (Fed.R.Civ.P. 56); *accord Arkwright–Boston Mfrs. Mutual Ins. Co. v. Wausau Paper Mills Co.*, 818 F.2d 591, 593 (7th Cir.1987). A material question of fact is a question which will be outcome-determinative of an issue in that case. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir.1984).

Recently the Supreme Court of the United States took the opportunity to address Rule 56, Fed.R.Civ.P. In two cases decided on the same day, the Court has expanded the scope of the application of Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

After *Celotex* it is clear that a non-moving party may not rest on its pleadings to avoid summary judgment. 106 S.Ct. at 2554. *See also Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987). The initial burden is on the moving party to demonstrate " 'with or without supporting affidavits' " the absence of a genuine issue of material fact, and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 106 S.Ct. at 2553 (quoting Rule 56). Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that

there is a genuine [material] issue for trial.' " *Id.* Furthermore, in *Anderson*, the Court held that what facts are material in a specific case shall be determined by the substantive law controlling that case or issue. 106 S.Ct. at 2510. In addition, the Court went on to interpret Rule 56 as requiring that the courts analyze summary judgment motions utilizing the standard of proof relevant to that case or issue. *Id.* at 2512–2513. For recent academic insight into *Celotex* and *Anderson*, see Childress, *A New Era For Summary Judgments: Recent Shifts at the Supreme Court*, 116 F.R.D. 183–194 (1987). At page 194 thereof, the author states:

> The recent Supreme Court cases likely require that summary judgment be more readily granted.... This emerging trend signals a new era for summary judgments, one in which the old presumptions are giving way to a policy of balancing and efficiency, and the mechanism is more appropriate to double as a sufficiency motion—allowing some sort of trial itself on the paper record.

For the judicial epilogue of *Celotex*, see *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987). A recent object lesson applying these ideas is found in *Richardson v. Penfold*, 839 F.2d 392 (7th Cir.1988). *See also Jamison–Bey v. Thieret*, 867 F.2d 1046 (7th Cir.1989). For an exact and recent analysis on this subject, see Friedenthal, *Cases on Summary Judgment: Has There Been a Material Change in Standards?* 63 Notre Dame L.Rev. 770 (1988).

The initial question is on what date the nine-month time period begins to run given the fact that the transformer was delivered on September 8, 1984. To determine this, the language in the bill of lading must be examined. The bill of lading stated "claims must be filed in writing ... within nine months *after* delivery of the property...." (emphasis added) The language states after delivery so the nine-month period should not begin to run until the day after delivery. *See Tribue v. U.S.*, 826 F.2d 633 (7th Cir.1987). If the parties would have wanted the delivery date in-

cluded in the nine-month period the document could have been drafted to so state. Further, 49 U.S.C. § 11707(e) states that:

A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section. The period for bringing a civil action is computed from the date that person receives written notice from the carrier that it has disallowed any part of the claim specified in the notice.

Support for the position that the date of delivery should not be included in the nine-month period comes from Rule 6(a) of the Federal Rules of Civil Procedure which states:

**Rule 6. Time**

(a) **Computation.** In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the district court inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation. As used in this rule and in Rule 77(c), "legal holiday" includes New Year's Day, Birthday of Martin Luther King Jr., Washington's Birthday, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States, or by the state in which the district court is held.

Rule 6(a) excludes the mailing date. Therefore, based upon the language in the bill of lading and Rule 6(a), the date of delivery, September 8, 1984, should not be included in the tabulation of the nine-month period. Thus, the first day of the nine-month claim period is the day after delivery September 9, 1984.

 Now that the starting date has been established from when the nine-month period begins, it must be determined when the nine-month period ends. The language in the bill of lading requires that the claim be filed. Filing has been defined by the Second and Third Circuits and we find their logic persuasive. A paper is not considered "filed" until it has been delivered to and received by the party with whom it is to be filed. *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2nd Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981); *Trent Coal, Inc. v. Sax,* 739 F.2d 116 (3rd Cir.1984). It is undisputed in this case that the claim was stamped received by Conrail on June 10, 1985. Thus, the document was "filed" on June 10, 1985.

Having established that the nine-month period began on September 9, 1984, and that the claim was filed on June 10, 1985, the court must now determine if the claim was timely filed within the nine-month period. This court finds the case of *Tribue v. U.S.,* 826 F.2d 633 (7th Cir.1987) written by Judge Manion very informative. This court also finds the reasoning in *Maahs v. U.S.,* 840 F.2d 863 (11th Cir.1988) persuasive. The *Maahs* case is factually similar but under the Federal Tort Claims Act rather than the Interstate Commerce Act. Neither act provides a formula to calculate when a claim is deemed filed and what happens when the period of limitations falls on a weekend. The court in *Maahs* held that where a claim occurred on January 25, 1984 and the statute required that the claim be brought within two years after the claim occurs and where the attorney mailed the claim on Friday, January 24, 1986, and it arrived on Monday, January 27, 1986 that the claim was not time barred. The court in its reasoning applied Rule 6(a). Rule

6(a) states that if a claim is to be filed on Saturday, Sunday or a legal holiday, then the claim is not due until the following Monday. The court said "The law regarding statutes of limitation is clear. Our court has consistently held that the method of Rule 6(a) applies to federal statutes of limitations." *Maahs*, 840 F.2d at 866. Further, the court went on to say that their holding in that case was consistent with their general policy of finding a legislative intent to apply Rule 6(a) to all federal statutes enacted or amended subsequent to Rule 6(a)'s promulgation. *Maahs*, 840 F.2d at 867. Thus, where the last day of a contractual period of limitations falls on a Saturday, Sunday, or a legal holiday, the claim period does not conclude until midnight of the next business day.

██ Even though this is an Eleventh Circuit Court of Appeals case and this court is not bound by its decision, this court finds its logic sound to apply Rule 6(a). When Rule 6(a) is applied in this case, the nine-month period would begin on September 9, 1984 and end on June 9, 1985. Since June 9, 1985 fell on a Sunday, Inland had until Monday, June 10, 1985 to file their claim. Therefore, the claim by Inland was timely filed.

In conclusion, this court finds that the Inland claim was timely filed. Further, this court does not reach the issue of whether the correspondence between Inland and Conrail was sufficient to constitute a filing of a written claim because the court finds that the claim was timely filed. Finally, this court finds that there is not an issue of material fact by and between Inland and Conrail on this issue. Therefore, defendant Conrail is DENIED summary judgment as a matter of law.

IT IS SO ORDERED.

APPENDIX A

## Straight Bill
## of Lading 44-302

GrayLine **SNAP-A-WAY FORM**

**Original-Not Negotiable** **Straight Bill of Lading Short Form** Shipper's No. 202-591

ConRail
(Name of Carrier)

Carrier's No. _____

RECEIVED, subject to the classifications and tariffs in effect on the date of the issue of the Bill of Lading.

at **LOUISVILLE, OHIO** 8|28 19 84 From **OHIO TRANSFORMER CORPORATION**

Consigned to Inland Steel Corporation

(Mail or street address of consignee—For purposes of notification only.)

Destination Indiana Harbor State Mich Zip _____ County _____ Delivery Address ★ _____

★To be filled in only when shipper desires and governing tariffs provide for delivery thereof.

Route CR-EJ&E

Delivering Carrier EJ&E Car or Vehicle Initials CR No. 766039

| No. Packages | Kind of Package Description of Articles Special Marks and Exceptions | *WEIGHT (Subject to Correction) | Class or Rate | Check Column | |
|---|---|---|---|---|---|
| 1 | 30 MVA 3Φ Transformer | 130,000# | | | |
| | DO NOT HUMP !! | | | | |

Subject to Section 7 of Conditions of applicable bill of lading, if this shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement.
The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.
COLLECT

(Signature of Consignor)

If charges are to be prepaid, write or stamp here "To be Prepaid"

Received $ _____ to apply in prepayment of the charges on the property described hereon.

Agent or Cashier

Per _____ (The signature here acknowledges only the amount prepaid.)

Charges Advanced

*If the shipment moves between two ports by a carrier by water the law requires that the bill of lading shall state whether it is carrier's or shipper's weight.
NOTE—Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property.
The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding

_____ per _____

*The fibre boxes used for this shipment conform to the specifications set forth in the box maker's certificate thereof, and all other requirements of the Consolidated Freight Classification.

**OHIO TRANSFORMER CORPORATION** Shipper, Per _____ Agent, Per _____

Permanent post-office address of shipper, **P. O. BOX 191 - LOUISVILLE, OHIO 44641**

© 1982 PRINTED IN U.S.A. BY
**WilsonJones**
GRAYLINE FORM 44-302 6-PART

APPENDIX B

Standard Form — Presentation of Loss & Damage Claims
CLAIMS NOT CONCLUDED WITHIN 12 DAYS FROM A BATE OF FILING WILL
ACCRUE INTEREST AT THE RATE OF 1-1/2% PER MONTH (18% PER ANNUM)

| Mr. Thomas Greenwood | East Chicago, IN | (Claimant's Number) § |
| (Name of person to whom claim is presented) | (Address of claimant) | |
| CONRAIL JUN 10 1985 June 7, 1985 | | 10275 |
| (Name of Carrier) (Date) | | (Carrier's Number) |
| 241 Main St. – Buffalo, New York 209 Suite 290 | | |
| (Address) | | |

This claim for $ 98,050.50 is made against the carrier named above by **Inland Steel Company**
(Amount of claim) (Name of claimant)

for **damage** in connection with the following described shipment(s):
(loss or damage)

Description of shipment **#2 Auto Transformer, Serial #0-C1330-3-2**

Name and address of consignor (shipper) **Ohio Transformer**

Shipped from **Louisville, OH** , To **Canton, OH**
(City, town or station) (City, town or station)

Final Destination **East Chicago, IN** Routed via **CR-203**
(City, town or station)

Bill of Lading issued by **Ohio Transformer** Co.; Date of Bill of Lading **See Attachments**

Paid Freight Bill (Pro) Number **" (ConRail)** ; Original Car Number and Initial **CR 766039**

Truck or Trailer Number **NA** Connecting Line Reference

Name and address of consignee (Whom shipped to) **Inland Steel Company – East Chicago, IN**

If shipment reconsigned enroute, state particulars:

### DETAILED STATEMENT SHOWING HOW AMOUNT CLAIMED IS DETERMINED
(Number and description of articles, nature and extent of loss or damage, invoice price of articles, amount of claim, etc.)

| | |
|---|---|
| Original Freight Charge (initial delivery) East Chicago, IN | |
| to Louisville, OH | 7,013.00 |
| Return freight charge (for repair) East Chicago, IN to | |
| Louisville, OH | 7,013.00 |
| Preparation for Transformer return (for repair) | |
| Ohio Transformer | 8,275.00 |
| Inspection/Repair of Transformer | |
| Ohio Transformer | 70,000.00 |
| Pre-return inspection and related return charges | 4,087.00 |
| Final on-site inspection charges | 1,662.50 |
| | |
| | |
| **Total Amount Claimed** | **98,050.50** |

IN ADDITION TO THE INFORMATION GIVEN ABOVE, THE FOLLOWING DOCUMENTS ARE SUBMITTED IN
SUPPORT OF THIS CLAIM*

( ) 1. Original bill of lading, if not previously surrendered to carrier.
(X) 2. Paid freight ("expense") bill. **(COPY)**
(X) 3. Original invoice or certified copy. **(COPY)**
X 4. Other particulars obtainable in proof of loss or damage claimed.

Remarks: **Impact recorder records (2) were sent in previous**
**correspondence. Despite numerous requests, a copy of the**
**inspection report was not received from carrier. Terms were**
**FOB ship point.**

The foregoing statement of facts is hereby certified to as correct.
PLEASE REMIT PAYMENT FOR THIS CLAIM TO:
**INLAND STEEL CO., Traffic Dept. 9-057**
**3210 Watling St., East Chicago, IN 46312**

(Signature of claimant)

§Claimant should assign to each claim a number, inserted at the upper right hand corner of this form. Reference should be made thereto in all correspondence pertaining to this claim.
*Claimant will please place check (x) before such items have been attached, and explain under "Remarks" the absence of any of the documents called for in connection with this claim responsible for claimant to produce original bill of lading, or paid freight bill, claimant should indemnify carrier or carriers deeds by original documents.

PLAINTIFF'S EXHIBIT B

EXHIBIT "A"

Made in U.S.A.

## APPENDIX C

March 27, 1986

Refer to:
CR HV 235-000-098
Inland Claim 10275

Mr. Mike Puaca
Project Traffic Analyst
Traffic Department 8-057
Inland Steel Company
3210 Watling Street
East Chicago, Indiana 46312

Dear Mr. Puaca:

Thank you for your letter dated March 7, 1986.

We have completed our investigation and in our final·
analysis we have determined that there is <u>no liability on
the part of the rail carrier as the claimed damage is not
indicative of rail carrier handling at time of shipment.</u>

<u>Your claim is disallowed in its entirety.</u>

Our records indicate that the <u>shipment in question moved
with prompt dispatch without experiencing any exceptions
enroute that would have contributed to the claimed damage.</u>
The shipment arrived at the destination railhead without
exceptions i.e. load shift and/or blocking disarranged which
would be apparent if damage occurred during rail handling.

The first notice received of the claimed damage was on
September 24, 1984 or 16 days subsequent to delivery and
additional handling to move unit to the ultimate site.

The extent of damage indicates that vertical forces were
exerted on the unit due to the numerous areas of damage
which are not related to one another, i.e. core movement and
super structure failure, which would result during the
loading or unloading process.

Very truly yours,

John A. Taberski
Supervisor Freight Claims

Suite 200, 241 Main Street
Buffalo, New York 14203

JAT/gbm

PLAINTIFF'S
EXHIBIT
C